IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 7, 2004

## WILLIE E. KYLES, JR. V. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 7076     Joseph H. Walker, Judge**

---

**No. W2004-00374-CCA-R3-PC  - Filed March 16, 2005**

---

Petitioner, Willie E. Kyles, Jr., filed a *pro se* petition for post-conviction relief, as amended after the appointment of counsel, arguing that he received ineffective assistance of counsel at trial. Specifically, Petitioner contends that his trial counsel (1) failed to adequately investigate the facts surrounding Petitioner's case or interview potential witnesses; (2) failed to file a motion to suppress; and (3) failed to challenge the chain of custody of the State's evidence introduced at trial. After review of the record in this matter, we affirm the trial court's dismissal of Petitioner's petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

D. Michael Dunavant, Ripley, Tennessee, for the appellant, Willie E. Kyles, Jr.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey Brewer, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I.  Background

Following a jury trial, Petitioner was convicted of possession of .5 grams or more of cocaine with the intent to deliver. *See* Tenn. Code Ann. § 39-17-417(c). Petitioner was sentenced to twelve years imprisonment as a Range II, multiple offender. The facts surrounding Petitioner's conviction were summarized by this Court in the direct appeal in *State v. Willie Earl Kyles, Jr.*, No. W2001-01931-CCA-R3-CD, 2002 WL 927604 (Tenn. Crim. App., at Jackson, May 3, 2002) *perm. to appeal denied* (Tenn. Oct. 21, 2002) as follows:

On July 7, 2000, Investigators John Bradley Thompson and Jeff Tudor of the Lauderdale County Sheriff's Department, Officer Greg Land of the Ripley Police Department, and Special Agent Barry Jones of the Tennessee Alcoholic Beverage Commission received a warrant authorizing a search of the Stan Lattimore residence at 175 Nelson Street in Ripley. The officers saw Lattimore and the defendant together in an automobile on Spring Street only minutes before the search of the residence. The automobile, which belonged to Lattimore, was in the driveway when they arrived. Tanika Bonds, who shared the residence with Lattimore, was sitting on the front porch and was served a copy of the warrant. As the officers executed the search warrant, the defendant walked out of the bathroom. Lattimore was not present. The officers found two bags of cocaine, which were later determined to have a total weight of 2.5 grams, and a bag of marijuana in a garbage can in the bathroom. The defendant claimed that the drugs were for his own use but conceded, when first questioned, that he had no employment. He had $171.00 in cash at the time of his arrest and explained that the money was for overdue child support. He claimed that he had purchased the cocaine from a man named Robert for $35.00 per bag and had used a portion of one of the bag's contents.

At trial, the defendant testified that he was divorced and had four children. He claimed that he was, in fact, employed in the record business at the time of his arrest, promoting the sale and distribution of compact discs. The defendant detailed how he promoted music through record stores and radio stations and submitted that he had maintained a job with Incognito Records since 1996. As exhibits, he produced a compact disc, a poster, and a flier. The defendant explained that on the date of his arrest, he had purchased the cocaine from "a guy named Robert." The defendant claimed that he went into the bathroom and "did [his] little thing" just before authorities arrived.

The defendant, also charged with possession of marijuana, entered a guilty plea on that count. He asserted that $71.00 of what he had in his pocket was for himself and that the remaining $100.00 was to be paid to an ex-wife for child support. The defendant claimed that on the day of his arrest, he had walked to Lattimore's residence from a nearby apartment complex and had not seen Lattimore until after the execution of the search warrant. He testified that a friend had provided him transportation from Memphis and that he intended to catch a bus home on the following afternoon. The defendant explained that he had arranged to spend the night in Ripley with his "old lady's mom." He maintained that he hid the drugs in the Lattimore garbage can instead of disposing of them because he thought that the individual at the door "was just one of the guys coming in, playing." He insisted that he had come from Shelby County to Lauderdale County only to visit his son, who was in the custody of his mother. The defendant stated that his cocaine habit extended over a period of three years. The state impeached the testimony of the defendant by the introduction of a 1989 armed robbery conviction.

Expert testimony established that the substance found by police was cocaine. One bag's contents weighed 1.9 grams and that of the other weighed .6 grams. The defendant explained that he had used a portion of the smaller bag just before the officers arrived. Neither Lattimore nor Bonds was charged by police.

*West*, 2002 WL 927604, at *1-2.

Petitioner's conviction was upheld on appeal. *Id.*

At the post-conviction hearing, Julie Pillow, Petitioner's trial counsel, testified that she was appointed to represent Petitioner about one month prior to the commencement of his trial. The delay in her appointment resulted from Petitioner's continued assertions to the trial court that he was going to hire counsel to assist him. Although Ms. Pillow and Petitioner primarily discussed his case over the telephone, Petitioner actively participated in the preparation for trial. Ms. Pillow said that she did not subpoena any witnesses because Petitioner said that he would bring the necessary documents to substantiate his employment at the time of the offense and any witnesses whom he wanted to testify.

Ms. Pillow said that Petitioner's defense was based on the fact that he was a user, not a dealer. In that regard, Ms. Pillow said that the search warrant worked to their advantage because it was not prompted by any of Petitioner's activities. In any event, Ms. Pillow said that she did not believe that Petitioner had standing to challenge the sufficiency or legality of the search warrant because he was a visitor to the residence.

Ms. Pillow agreed that one of the main issues at trial was the status of Petitioner's employment at the time of the offense. She said that she introduced one of Petitioner's paycheck stubs and advertising materials from Incognito Records as exhibits. Ms. Pillow said that Petitioner had not mentioned Ronald Carruthers as a possible witness. Because Petitioner testified about the status of his divorce and child support obligations, Ms. Pillow did not feel it was necessary to subpoena the pleadings filed in the divorce proceedings.

Ms. Pillow said that she did not remember Petitioner telling her that Mr. Lattimore would testify that he was a drug user and not a dealer. In any event, Ms. Pillow felt that Mr. Lattimore would not make a good witness because the drugs were found in his house, and he would probably be reluctant to incriminate himself.

Ms. Pillow said that she had tried numerous drug cases, and she did not see any issues in the chain of custody of the drugs taken from Petitioner during the search of the Lattimore residence. She said that she vigorously cross-examined the handlers of the drugs, and Petitioner never raised the issue of chain of custody at trial.

Sandra Burnham, the Lauderdale County chancery court clerk, produced Petitioner's final decree of divorce dated February 8, 2000. Ms. Burnham said that Petitioner was required to pay fifty

dollars each week in child support, and the payments were to be collected through the issuance of a wage assignment to Petitioner's employer, Incognito Records. Ms. Burnham said that the records did not show that Petitioner had made any child support payments, and a wage assignment was never issued because the court did not have Incognito Record's address. Ms. Burnham said that she did not know whether Petitioner made his child support payments directly to his ex-wife, or whether Petitioner was employed by Incognito Records when Petitioner was arrested.

Stanley Lattimore said that he would have testified in Petitioner's behalf had he been asked to do so. Mr. Lattimore said that Petitioner was a drug user, and he had never known of Petitioner to sell any drugs. Mr. Lattimore admitted that he had several prior drug related convictions, and that he did not know what any individual drug user does each minute of any particular day. Furthermore, Mr. Lattimore acknowledged that he was not aware that Petitioner was using drugs in the house until after he arrived, and he was not present when the search warrant was executed.

Petitioner agreed that he talked with Ms. Pillow by telephone and in person prior to his trial, but he said that he felt they were not ready when the trial date arrived. Petitioner said that he told Ms. Pillow to interview Mr. Lattimore, Tanika Bonds, and Mr. Carruthers, but she failed to do so. Petitioner said that Ms. Pillow should have introduced a copy of his final decree of divorce to substantiate his testimony that the money he had with him on the day of his arrest was for child support. Petitioner conceded that the district attorney's office had determined that the chancery court records reflected that he had not made any child support payments since his divorce. Petitioner insisted that Ms. Pillow should have challenged the chain of custody of the drugs because Petitioner did not know who had the drugs for a period of time. Petitioner later conceded that the police records showed that Officer John Bradley Thompson had custody of the drugs.

At the conclusion of the post-conviction hearing, the trial court found that Petitioner had failed to support his factual allegations by clear and convincing evidence. The trial court accredited the testimony of Ms. Pillow and found that Petitioner had failed to show that his counsel had provided ineffective assistance in interviewing potential witnesses, investigating the factual support for the charged offense, or challenging the chain of custody. The trial court also found that Petitioner had not shown any basis for challenging the search warrant issued, or that the trial results would have been any different had Ms. Pillow filed a motion to suppress. Accordingly, the trial court dismissed Petitioner's petition for post-conviction relief.

## II. Standard of Review

In his appeal, Petitioner alleges that his trial counsel rendered ineffective assistance of counsel. A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f)(1997). However, the trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review. *Id.*; *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id.* Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

## III. Ineffective Assistance Claims

Petitioner argues that his trial counsel provided ineffective assistance for failing to challenge the chain of custody of the State's evidence introduced at trial, consisting primarily of the drugs taken from Petitioner on the day of his arrest. Petitioner testified that he did not know who had possession of the drugs taken from him, but then conceded that the records showed that the drugs were in the custody of Officer John Bradley Thompson. There is no indication in the record that there was any break in the chain of custody. Moreover, Petitioner did not present any evidence that a challenge to the chain of custody of the State's evidence would have been successful had one been made. The evidence does not preponderate against the trial court's finding that Petitioner failed to show that his trial counsel was ineffective in this regard or that he was prejudiced by any alleged deficiency in his counsel's conduct.

Petitioner argues that his trial counsel's conduct was deficient for failing to file a motion to suppress the evidence taken from him during the search of the Lattimore home. Relying on *Kimmelman v. Morrison*, 477 U.S. 365, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986), Petitioner submits that the failure to file a motion to suppress alone can support an ineffective assistance of counsel claim. In *Kimmelman*, however, the determination that counsel's performance fell below the standard demanded of criminal attorneys was based primarily on counsel's failure to conduct any pretrial discovery that would have disclosed the presence of the incriminating evidence. *Kimmelman*, 477 U.S. at 386, 106 S. Ct. 2588.

That is not the fact scenario presented in the case *sub judice*. Ms. Pillow said that she did not file a motion to suppress because, after reviewing the matter, she did not believe that Petitioner had standing to challenge the legality of the search warrant. In order to establish the ineffective assistance of counsel for failure to file a motion to suppress, "the [petitioner] need prove only that the search or seizure was illegal and that it violated his reasonable expectation of privacy in the item or place at issue." *Id.* 477 U.S. at 374, 106 S. Ct. at 2582.

The warrant authorized a search of the Lattimore residence. Petitioner testified at trial that he purchased cocaine from a man named "Robert," and used the residence's bathroom so that he could ingest a portion of the cocaine. There is no indication in the record that Petitioner had any connection to the Lattimore home other than as a passing visitor to the residence for the purpose of consuming drugs on the premises. When a defendant is present as a visitor in another's home for a short period of time and is essentially at the location to conduct a business transaction, the defendant possesses no expectation of privacy in the home. *Minnesota v. Carter*, 525 U.S. 83, 89-91, 119 S. Ct. 469, 473-474, 142 L. Ed. 2d 373 (1998). Nor does Petitioner suggest any basis for challenging the search. Accordingly, we find that he evidence does not preponderate against the trial court's finding that Petitioner failed to show that his trial counsel's conduct was deficient for failing to file a motion to suppress.

Petitioner argues that his trial counsel was ineffective because she failed to interview Ms. Burnham, Mr. Lattimore or Mr. Carruthers, and failed to call them as witnesses at trial. When a petitioner contends that trial counsel failed to discover, interview, or present a witness in support of the defense, he should present that witness at the evidentiary hearing on the post-conviction claim. *Black*, 794 S.W.2d at 757. Unless the petitioner is able to show that the witness could have been located and would have testified favorably, the petitioner has failed to establish the prejudice prong of the *Strickland* test. *Id.* at 758. Petitioner did not call Mr. Carruthers as a witness at the post-conviction hearing, and thus has failed to show that he was prejudiced by trial counsel's failure to call Mr. Carruthers as a witness at trial.

As for counsel's failure to call Ms. Burnham and Mr. Lattimore as witnesses, the trial court resolved any conflicts in Ms. Pillow's and Petitioner's testimony in favor of Ms. Pillow. Although Petitioner's final decree of divorce established that Petitioner had an obligation to pay child support, Ms. Burnham testified that the chancery court had no record that Petitioner had ever made any child support payments. Moreover, Ms. Burnham could not confirm whether Petitioner was employed at the time of his arrest.

Ms. Pillow said that she did not remember Petitioner telling her that Mr. Lattimore would testify that Petitioner was a drug user instead of a drug dealer. In any event, Ms. Pillow said that she would have been reluctant to use Mr. Lattimore as a witness since the drugs were found in his house. Mr. Lattimore admitted at the post-conviction hearing that he had several prior drug related convictions, and that he could not testify as to what Petitioner did at his house before the police arrived at his house. The evidence does not preponderate against the trial court's finding that

Petitioner failed to show that he was prejudiced by Ms. Pillow's failure to call Ms. Burnham and Mr. Lattimore as witnesses at trial.

After review of the record, we find that the trial court did not err in dismissing Petitioner's petition for post-conviction relief.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.

_____

THOMAS T. WOODALL, JUDGE